

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/29/2012

| | | |
|---|---|---|
| IN RE: | § | **Case No. 09-36637** |
| **ROBERT S BENNETT; aka BENNETT,** | § | **Chapter 7** |
| Debtor(s). | § | **Judge Isgur** |

## MEMORANDUM OPINION

On September 8, 2011, the Court sanctioned Coghlan and Coghlan & Associates (collectively, "Coghlan") for violating Debtor Robert Bennett's discharge injunction. The Court stayed the sanction order on September 19, 2011 and requested supplemental pleadings. The Court now vacates its September 8, 2011 sanction order, concluding that Coghlan's pleadings in the state court action between Coghlan and Bennett do not violate the discharge injunction.

### Background

In 1995, Coghlan and Bennett, both attorneys, worked together on a class action lawsuit. Adv. No. 09-3514, ECF No. 1, at 3-4; ECF No. 5, at 2. In 1998, Coghlan sued Bennett for fraud and breach of fiduciary duty, alleging that Bennett fraudulently failed to share legal fees in connection with the class action. Adv. No. 09-3514, ECF No. 1, at 3-4. In 2001, Coghlan obtained a judgment against Bennett for $86,625.00, plus costs and interest. Adv. No. 09-3514, ECF No. 1, at 4; ECF No. 5, at 2.

Coghlan filed a turnover lawsuit against Bennett on September 28, 2001, seeking to collect on the 2001 judgment. ECF No. 204-3, at 12; Adv. No. 09-3514, ECF No. 1, at 5; ECF No. 5, at 3. The turnover lawsuit is still pending in state court.

During the pendency of the turnover lawsuit, Bennett filed two separate bankruptcy cases. Bennett's first case, No. 08-35285, was dismissed on September 1, 2009. Bennett filed the current bankruptcy case, No. 09-36637, on September 3, 2009. Because the previous case

had been pending less than one year before Bennett filed this case, Bennett filed a motion to extend the stay, No. 09-36637, ECF No. 14, on September 9, 2009 to prevent the automatic termination of the stay on the thirtieth day after the filing of the case.  11 U.S.C. § 362(c)(3)(A).

On October 14, 2009, the Court denied the motion to extend the stay.  No. 09-36637, ECF No. 58.  In order to obtain an extension of the stay, Bennett was required to demonstrate by clear and convincing evidence that he had filed this bankruptcy case in good faith.  11 U.S.C. § 362(c)(3)(B).  Under § 362(c)(3)(C)(i)(II)(aa), this case was presumptively not filed in good faith.  Bennett failed to rebut the presumption by clear and convincing evidence showing good faith.  The Court found that Bennett failed to prove either objective or subjective good faith.  He failed to submit any evidence objectively illustrating his ability to perform under a plan and receive a discharge, and the overwhelming weight of the evidence showed that Bennett filed the case in bad faith in order to evade and injure creditors.  No. 09-36637, ECF No. 58, at 2.  The stay therefore terminated on October 3, 2009.

On December 30, 2009, Coghlan and other plaintiffs filed Adversary No. 09-3514, seeking a denial of discharge under § 727(a)(5) and an exception to discharge under § 523(a)(2) and/or § 523(a)(4) of the Bankruptcy Code.  Adv. No. 09-3514, ECF No. 1.

The § 727(a)(5) claim was tried on October 4, 2010.  Kelly Coghlan testified at the trial that the Plaintiffs' claims had already been conditionally paid into the state court registry.  The Court stated at the close of the trial that if the state court payment was made prior to the issuance of a judgment on the § 727(a)(5) claim, the Plaintiffs would lose standing.  On October 28, 2010, the Court issued an order overruling the Plaintiffs' § 727(a)(5) claim.

The Plaintiffs filed status reports on November 24, 2010 and December 1, 2010.  Adv. No. 09-3514, ECF Nos. 56 & 60.  The December 1, 2010 status report stated that the Plaintiffs' claims had been paid and that the Plaintiffs were withdrawing their claims.  ECF No. 60.

On December 6, 2010, Bennett and the Plaintiffs filed a joint motion to dismiss the adversary proceeding, stating that the Plaintiffs' claims had been paid.  Adv. No. 09-3514, ECF No. 63.  On December 8, 2010, the Plaintiffs filed a motion to dismiss the adversary proceeding.  Adv. No. 09-3514, ECF Nos. 65 & 66.  The Plaintiffs stated that they had each received full payment of their claims against Bennett on or about December 2, 2010, and they moved that the adversary be dismissed without prejudice.  Adv. No. 09-3514, ECF No. 66.  The Court dismissed the adversary proceeding without prejudice on January 10, 2011.  Adv. No. 09-3514, ECF No. 74.

Bennett was granted a discharge on July 20, 2011.  No. 09-36637, ECF No. 189.

On July 25, 2011, Bennett filed an emergency motion to enforce the discharge injunction against Coghlan.  ECF No. 191.  On July 26, 2011, the Court issued an order finding that Coghlan was violating the discharge injunction.  ECF No. 193.  On August 17, 2011, the Court issued an order stating that Coghlan was barred from attempting to collect legal fees in a state court action against Bennett, stating that attempts to collect legal fees associated with a prepetition claim would violate the discharge injunction, and requiring Coghlan to file amended pleadings with the state court to clarify that Coghlan sought only sanctions payable to the court and/or sanctions or fees based on Bennett's alleged post-petition misconduct.  ECF No. 200.

On August 22, 2011, Coghlan filed the Status Report and Memorandum of Law, ECF No. 230-3, and the Third Supplement to Application for Turnover to Clarify and Amend Prior Pleadings, ECF No. 230-4.  The Status Report and the Third Supplement state that Coghlan

sought only sanctions payable to the state court, an award of sanctions based on post-petition misconduct by Bennett, and an award of attorney's fees based on post-petition misconduct by Bennett.  ECF No. 230-3, at 2; ECF No. 230-4, at 2.  Coghlan sought state court sanctions on three Texas state law grounds:  the inherent power of the state court, Tex. R. Civ. P. 215, and Tex. R. Civ. P. 13.  The Status Report alleges that Bennett violated state court orders that were issued on November 12, 2003; January 19, 2010; and March 3, 2010.  ECF No. 230-3, at 7.  The November 12, 2003 order required ongoing monthly and quarterly payments toward a judgment against Bennett and in favor of Coghlan and other plaintiffs.  The January 19, 2010 and March 3, 2010 orders enforced compliance of the November 12, 2003 order.

The Status Report also alleges a pattern of discovery abuse and failure to comply with discovery orders.  Although the state court pleadings state that Coghlan seeks relief only for post-petition misconduct, the Status Report contains numerous factual allegations regarding Bennett's conduct throughout the pendency of the turnover action.  ECF No. 230-3, at 12.

On September 8, 2011, the Court sanctioned Coghlan and Coghlan & Associates for continuing to seek legal fees in the state court action.  ECF No. 205.  The Court stayed its sanction order on September 19, 2011 and requested supplemental briefing from the parties on whether Coghlan's state court pleadings violated the discharge injunction.  On September 26, 2011, the Court issued an order clarifying that its prior findings may have been issued in error. ECF No. 222.

The parties filed numerous supplemental pleadings.  Bennett filed a supplemental response on October 14, 2011.  ECF No. 225.  Coghlan filed a supplemental response on October 27, 2011.  ECF No. 230.  Bennett filed a surreply on November 1, 2011.  ECF Nos. 231 & 232. Coghlan filed a clarifying statement on December 8, 2011.  ECF No. 237.  Bennett filed a

response to the clarifying statement on December 16, 2011. ECF No. 238. Coghlan filed a reply

on December 21, 2011. ECF No. 239. Bennett filed a surreply on January 31, 2012. ECF No.

248. Coghlan filed a response to the surreply on February 2, 2012. ECF No. 250.

On January 17, 2012, Coghlan filed a motion for leave to refile its § 523 claim against

Bennett. ECF No. 246. The Court issued a show cause order requiring Bennett to file a pleading

demonstrating (i) whether he defrauded the Court in obtaining the dismissal of Adversary No.

09-3514; and (ii) why the order dismissing Adversary No. 09-3514 should not be vacated. ECF

No. 247.

Bennett filed a response to the order on February 13, 2012. ECF No. 251. Coghlan

replied to Bennett's response on February 22, 2012. ECF No. 252. Coghlan also filed exhibits.

ECF Nos. 253 & 254. Coghlan filed an amended reply on February 23, 2012. ECF No. 255.

On March 19, 2012, the Court denied Coghlan's motion to refile the § 523 claim, stating

that the time allowed under Fed. R. Bankr. P. 4007(c) for filing a complaint under § 523(c), as

previously extended, had passed. ECF No. 256.

Coghlan filed a motion to vacate the dismissal of Adversary No. 09-3514 on March 21,

2012. ECF No. 257. Coghlan also filed a supplement to the motion on March 21, 2012, ECF

No. 258, and an additional supplement on March 28, 2012, ECF No. 260. Bennett filed his first

amended response to the Court's show cause order on April 24, 2012. ECF No. 261. By a

separate order, the Court sets an evidentiary hearing on Coghlan's motion to vacate.

## Analysis

The Court initially ruled that Coghlan's state court pleadings violated the discharge

injunction. The Court's ruling was in error. The language of Coghlan's pleadings refers to

Bennett's pre-petition conduct in the turnover action. However, a careful reading of the Status

Report and the Third Supplement shows that Coghlan's request for relief is permitted under the discharge injunction.

In the Status Report and Third Supplement, Coghlan seeks three categories of relief:

(i)     sanctions payable to the state court;

(ii)    an award of sanctions based on post-petition misconduct by Bennett, payable to Coghlan; and

(iii)   an award of legal fees based on post-petition misconduct by Bennett, payable to Coghlan.

ECF No. 230-4, at 2.

The first category, sanctions payable to the state court, is permitted under the discharge injunction.  If the state court orders sanctions payable to the government, then the sanctions are excepted from discharge pursuant to 11 U.S.C. § 523(a)(7).  *See United States Dep't of Housing and Urban Dev. v. Cost Control Mktg. & Sales*, 64 F.3d 920, 927-28 (4th Cir. 1995).  The language of Coghlan's state court pleading is clear as to the first category of sanctions; there is no question that Coghlan may seek sanctions payable to the state court.

The second category, sanctions based on post-petition misconduct, is also permitted under the discharge injunction.  Post-petition misconduct, even in connection with a pre-petition discharged debt, may give rise to additional sanctions—sanctions that are not discharged.  This is true even when the alleged misconduct involves, as here, failure to comply with the ongoing obligations established by a pre-petition order.  *See In re Williams*, 215 B.R. 189, 192 (Bankr. M.D. Ga. 1997) ("[Although] the liabilities imposed by the [post-petition] Order were related to acts and omissions that occurred at a time when debts were subject to discharge, the [post-petition] Order created a separate claim for Movants. . . . [A]ny claim for additional sanctions based upon the failure of Debtors to comply with that Order arose both post-petition and post-

discharge.").   Because the automatic stay terminated in Bennett's current bankruptcy case, Bennett was obligated to comply with the state court's discovery orders, even after he filed his petition.  *See Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307 (10th Cir. 2008) (noting that, even when debts had already been discharged with respect to the debtors, debtors were required "to bear such collateral burdens of litigation as those relating to discovery" in an action to collect against a third party).

   Three of the orders Bennett allegedly violated concern pre-petition discharged debt. The state court's November 12, 2003 order required Bennett to make monthly and quarterly payments to the state court receiver for the benefit of Coghlan and other plaintiffs in the turnover action.  ECF No. 230-3, at 8.  The payments were to be applied toward a November 12, 2003 judgment against Bennett and in favor of Coghlan and the other plaintiffs.

   Coghlan explicitly seeks sanctions only for Bennett's failure to comply with November 12, 2003 order after September 3, 2009:  "Coghlan is not pursuing Bennett's violations of the November 12, 2003 Order prior to September 3, 2009, but only his violations after that date and in connection with attorney's fees after September 3, 2009."  ECF No. 230-3, at 7.  Bennett was not required to make payments from September 3, 2009 until October 3, 2009 because the automatic stay was in effect.  After the automatic stay terminated, Bennett was required to comply with the order even though the order concerned pre-petition debt that would eventually be discharged.  Although Coghlan is now barred from seeking direct enforcement of the November 12, 2003 Order because the underlying debt has been discharged, Coghlan may seek sanctions for Bennett's failure to comply with the November 12, 2003 order from October 3, 2009 until July 20, 2011, when Bennett was granted a discharge.  Coghlan may also seek

sanctions for failure to comply with the (post-petition) January 19, 2010 and March 3, 2010 orders, which enforced the November 12, 2003 order.

The third category, an award of legal fees based on post-petition misconduct, is also allowed. Legal fees awarded on the basis of post-petition misconduct are a post-petition debt. Coghlan seeks sanctions under Tex. R. Civ. P. 215, which allows an award of legal fees for failure to comply with discovery requests or obey discovery orders.

Bennett argues that legal fees in the turnover action are limited to fees awarded under Tex. Civ. Prac. & Rem Code § 31.002(3), that sanctions are not warranted at such a late date, and that even if sanctions were warranted, Coghlan has failed to segregate the fees that relate to Bennett's alleged misconduct. The Bankruptcy Court need not consider the merits of these arguments. Although the opposing party's legal fees may or may not be the correct measure of sanctions for post-petition discovery misconduct, the decision of whether to award sanctions, and how much to award, rests with the state court. *See Paul*, 534 F.3d at 1311 ("[T]he merits of the state claims should be determined by the court in which they are asserted.").

In support of the argument for legal fees under Tex. R. Civ. P. 215, Coghlan cites Bennett's years of alleged misconduct in the turnover action. Coghlan's allusion to the history of misconduct may provide factual context for the gravity of the alleged post-petition misconduct. Coghlan cites *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242-43 (Tex. 1985), for the proposition that a Texas state court can consider a pattern of discovery abuse in rendering sanctions. In *Downer*, the court considered numerous acts of discovery abuse together in awarding sanctions. *Downer* does not explicitly establish that past acts can provide factual context for determine the appropriate level of sanctions for later acts, but the Bankruptcy Court need not decide whether Bennett's alleged pre-petition misconduct has any bearing on the

appropriateness of sanctions for post-petition misconduct.   The state court will decide the relevance of these facts; the Bankruptcy Court holds only that merely alleging a pattern of discovery abuse that began pre-petition does not violate the discharge injunction.   The pleadings are explicit that relief is sought solely on the basis of post-petition misconduct.

Because the legal fees are sought on the basis of post-petition misconduct, they are a post-petition debt.   Debts that arose post-petition—after September 3, 2009—were not discharged.   *See* 11 U.S.C. § 727(b) ("[A] discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]").   The question of when a debt arises under the Bankruptcy Code is governed by federal law.   *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 532 (9th Cir. 1998).

Post-petition legal fees incurred in enforcing a pre-petition claim are usually part of the pre-petition claim.   *Egleston*, 448 F.3d at 811.   Legal fees are a contingent claim against the estate as of the petition date—if the fees are contingent upon future events other than the acts of the debtor.   *Siegel*, 143 F.3d at 532.   If, for example, the fees are contingent upon a creditor's obtaining a favorable outcome in litigation, the fees are a contingent pre-petition claim.

However, to the extent the fees are contingent on the acts of the *debtor*, they are not a contingent claim within the meaning of § 101(5)(A), and they are not a claim against the estate as of the petition date.   *Siegel*, 143 F.3d at 532 ("No doubt the future is always contingent, but that does not mean that a bankrupt is discharged regarding everything he might do in the future.").

If the fees are contingent upon the debtor's voluntary post-petition acts or omissions, the fees are, instead, a post-petition claim against the debtor.   *Id.*   "Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged

depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition

claim and has thereby risked the liability of these litigation expenses." *Boeing N.A., Inc. v.*

*Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026 (9th Cir. 2005).

In *Siegel*, the debtor chose to sue under a contractual provision after the debtor's liability

under the contract had been discharged. 143 F.3d at 533. The trial court granted the creditor's

motion for summary judgment and awarded fees under the contract's legal fees provision. The

Ninth Circuit upheld the fee award, holding that where the debtor "chose to return to the fray and

use the contract as a weapon," it was "perfectly just, and within the purposes of bankruptcy, to

allow the same weapon to be used against him." In *Shure v. Vermont (In re Sure-Snap Corp.)*,

983 F.2d 1015, 1018 (11th Cir. 1993), the Eleventh Circuit upheld a fee award where the debtor,

after confirmation of its chapter 11 plan, pursued an appeal of a declaratory judgment action

concerning the enforceability of a mortgage and security agreement with a legal fees provision.

The court noted that "[b]y choosing to appeal the validity of the Agreement after confirmation,

Sure-Snap did so at the risk of incurring post-confirmation costs involved in its acts." *Id.*

Finally, in *Ybarra*, the court held that post-petition legal fees were not discharged when a debtor

actively revived a state court suit and thus "returned to the fray." 424 F.3d at 1027.

Similarly, when the fee is incurred as a result of a debtor's post-petition misconduct in

extending litigation, that fee—to the extent that it is recoverable under non-bankruptcy law—is a

post-petition debt. A debtor may not assume that a debt will eventually be discharged and refuse

to comply with post-petition discovery requirements after the automatic stay has terminated. *See*

*Paul*, 534 F.3d at 1307 (stating that debtors are required to comply with discovery obligations in

legitimate proceedings).

The Court recognizes that the 2005 bankruptcy amendments placed the parties in a unique factual scenario.   Under § 362(c)(3), the automatic stay was imposed, but only for 30 days.   After the expiration of the 30-day period, Bennett's creditors were free to act against him, and Bennett was obliged to comply with the state court's orders.   Once his discharge was granted, Bennett again obtained protection from creditor actions.

The Court does not make any finding as to whether Bennett actually engaged in post-petition misconduct.   The issue is whether Coghlan is, explicitly or implicitly, seeking to collect legal fees for any reason other than post-petition misconduct.

If Coghlan's allegations are correct, separation of post-petition fees is warranted.   If Coghlan is wrong, then the sanctions will not be awarded.   The state court will decide whether the fees were incurred as a result of post-petition misconduct.   The Bankruptcy Court holds that Coghlan does not violate the discharge injunction merely by seeking legal fees under this theory.

Coghlan's state court pleadings do not, on their face, seek to collect discharged debt. However, Bennett argues that the state court pleadings, even if they do not explicitly seek to collect discharged debt, attempt to coerce Bennett into satisfying pre-petition claims.   Actions that have the objective effect of coercing payment of pre-petition debts violate the discharge injunction:

> Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves "the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly," i.e., so as to obtain payment of the discharged debt. The inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required.

*Paul*, 534 F.3d at 1308.   Courts take into account whether the creditor has any reason other than coercion for its action.   *Id.* at 1309.   Coghlan has a legitimate, non-coercive reason to seek to

collect post-petition sanctions.  *See id.* (noting that courts allow actions that are "not undercut by the evident lack of any legitimate economic purpose").

There is nothing covert about Coghlan's attempts.  Coghlan must persuade the state court to award the sanctions, and the Court presumes that the state court will not award sanctions unless they are warranted.  There is no indication that Coghlan's actions coerce or are intended to coerce Bennett into satisfying any debt that has been discharged.

Finally, the Court considers whether the Status Report and the Third Supplement supplant prior inconsistent pleadings.  Bennett argues that supplemental pleadings do not supersede Coghlan's earlier pleadings, which sought to recover amounts that are now discharged.  Bennett asserts that even if Coghlan's pleadings are clear now, if Coghlan is allowed to resume litigation in state court, Coghlan may again seek to collect discharged debt.  Although the Third Supplement is labeled as a supplemental pleading, it acts as an amended pleading under Texas state law and thus supersedes prior pleadings.  *See Renzenberger v. O'Bryant*, 2005 WL 1361620, at *7 (Tex. App.—Corpus Christi 2005, no pet.)  ("An amended pleading . . . supersedes all prior petitions").  A "supplemental" pleading is "filed in response to the last pleading of adverse party and repeats allegations previously pleaded only when necessary."  *Id.*  "An amended petition, on the other hand, adds to or withdraws from that which was previously pleaded[.]"  *Id.*  In determining the nature of a pleading, courts look to the substance of the pleading and not just to the title given to the pleading.  *Id.*  The substance of Coghlan's Third Supplement is an amended pleading; it makes clear that Coghlan withdraws prior requests for relief and seeks only the relief permitted under the Bankruptcy Court's August 17, 2011 order.  ECF No. 230-3, at 19.

Even if the Third Supplement did not act as an amended pleading under Texas law, Coghlan is not necessarily required to amend pleadings to avoid violation of the discharge injunction as long as Coghlan clearly does not seek to collect discharged debt. *Sparks Tune-Up Ctrs., Inc. v. Strong*, 175 B.R. 230, 232 (N.D. Ill. 1994) (holding that there was no violation of the discharge injunction where the plaintiffs "affirmatively state that . . . the only issues remaining in this case are trademark infringement damages for ongoing trademark infringement" and ruling that "amending [the] complaint would serve no practical purpose"). The Third Supplement and the Status Report affirmatively state that Coghlan does not seek any relief aside from the three allowed categories. The Court therefore considers the Third Supplement and the Status Report as stating Coghlan's only remaining claims for relief in the turnover action. The Court does not attempt to police hypothetical future violations of the discharge injunction. If Coghlan, or any other creditor, later attempts to collect discharged debt, Bennett will be free at that time to seek enforcement of the discharge injunction.

The Court concludes that Coghlan's state court pleadings do not violate the discharge injunction and vacates its order for sanctions.

### Conclusion

The Court's order for sanctions against Coghlan, ECF No. 205, is vacated.

SIGNED **June 28, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE